UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

HELEN PITTS, ET AL

VERSUS

BRUCE GREENSTEIN, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF THE
LOUISIANA DEPARTMENT OF HEALTH
AND HOSPITALS, ET AL

CIVIL ACTION

NO. 10-635-JJB-SR

**RULING ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

This matter is before the Court on Plaintiffs' Motion (doc. 30) for Class Certification. Defendants have filed an opposition (doc. 32) to which Plaintiffs have filed a reply (doc. 33). There is no need for oral argument. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331.

**Background**

**I. Facts**

This case arises out of the State of Louisiana's decision to lower the maximum number of home-and-community-based health service ("HCBS") hours available to its disabled citizens. Since 2003, Louisiana has offered HCBS to disabled individuals through its long-term personal care services ("LT-PCS") program. The LT-PCS program provides disabled individuals with personal care workers to assist them in performing basic tasks that they would otherwise be unable to perform, such as personal care or household chores. Those who do not qualify for LT-PCS, or seek additional or alternative services, may enter one

1

of the State's waiver programs. However, each program suffers from limited slots, geographical or age limits, and/or waiting lists.

In September 2010, in order to address budgetary concerns, the State passed Act 490, which lowered the maximum weekly LT-PCS service hours from 42 to 32 (doc. 36, ex. 1, pp. 11, 66-67). The cut applies not only to new LT-PCS recipients but also to individuals currently receiving assistance when they undergo their annual eligibility assessments.

## II. Procedural History

On September 22, 2010, Plaintiffs filed suit against the Louisiana Department of Health and Human Services ("LADHHS") and its Secretary, Bruce Greenstein, seeking declaratory and injunctive relief (doc. 1). Plaintiffs assert that the reduction in LT-PCS hours unlawfully discriminates against disabled individuals by depriving them of at-home assistance necessary to remain "integrated" into the community in violation of the Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 (2010), and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794(a) (2010). Plaintiffs request that the Court order Defendants to return to the 42-hour weekly maximum.

On December 20, 2010, Plaintiffs filed their Motion (doc. 30) for Class Certification. Plaintiffs provided the following class definition:

> Louisiana residents with disabilities who are recipients or prospective recipients of Medicaid-funded services through the LT-PCS program; who desire to continue to

2

> reside in the community instead of in a nursing facility; who can reside in the community with appropriate Medicaid-funded LT-PCS services; and who are at risk of being forced to enter a nursing home because Defendants plan to reduce the level of community-based services.

(doc. 30, p. 1). Plaintiffs assert that the class, as defined, satisfies Federal Rule of Procedure 23 for class certification.

On January 10, 2011, Defendants filed their opposition (doc. 32). Defendants assert that the proposed class definition is overly broad. Defendants also assert that the named plaintiffs' claims and the defenses likely to be asserted against them are not typical of the remaining class members. Finally, Defendants assert that the named plaintiffs have conflicting interests with the remaining class members and so will not fairly and adequately represent their interests.

On January 25, 2011, Plaintiffs filed their reply (doc. 33). Plaintiffs assert that the class is not overly broad. Plaintiffs also assert that the named plaintiffs' claims and defenses are sufficiently typical to the remaining class members and that the named plaintiffs will fairly and adequately represent the remaining class members.

## Discussion

### I. The proposed class definition

Defendants assert that the proposed class is overly broad because it includes individuals who (1) do not require more than 32 hours of weekly service;

(2) require more than 32 hours of weekly service, but have access to waiver programs, financial resources or other means to secure supplemental care; and (3) require more than 42 hours of weekly service (doc. 32). Defendants assert that the class should be defined to exclude these individuals and propose the following class definition:

> Louisiana residents with disabilities who have been receiving Medicaid-funded services through the LT-PCS program; who desire to reside in the community instead of a nursing facility; who require more than 32 and less than 42 hours of Medicaid-funded personal care services per week in order to avoid entering a nursing facility, and who do not have available (including through family supports, shared living arrangements, or enrollment in the ADHC waiver) other means of receiving personal care services.

(doc. 32).

Plaintiffs concede that the class definition should not include individuals who do not need more than 32 hours of weekly service (doc. 33). However, Plaintiffs disagree that the class should exclude individuals who require more than 42 hours per week of service. Plaintiffs also assert that the class should not exclude individuals who have access to the necessary supplemental care.

The Court finds that the class should be defined to (1) exclude individuals who do not require at least 32 hours of weekly service; (2) exclude individuals who are capable of receiving the necessary supplemental care through alternative sources; and (3) include individuals who require over 42 hours of care per week. The Louisiana Administrative Code, states that "[t]he mission of [LT-

PCS] is to *supplement* the family and/or community supports that are available to maintain the recipient in the community" and that "[it] is *not intended to be a substitute* for available family and/or community supports." La. Admin. Code tit. 50, § 34 12901 (2010) (emphasis added). Therefore, whether a recipient has access to other means of care should be considered in defining the class, keeping in mind that the State has necessarily determined that current LT-PCS recipients lack access to supplemental care.

However, individuals requiring over 42 hours of care per week should be included in the class. The ADA's and Section 504's "integration mandate" prohibits a state from increasing an individual's risk of institutionalization if reasonable accommodations are available. *Olmstead v. L.C. ex rel Zimring*, 527 U.S. 581, 597, 604, 607 (1999). Individuals requiring more than 42 hours of weekly LT-PCS and who have managed to remain out of nursing facilities have necessarily found access to supplemental care. If these individuals are suddenly forced to make due with 10 less hours of weekly assistance, the supplemental care they have secured may no longer be sufficient to avoid institutionalization. As such they almost certainly face a risk of institutionalization due the reduction and, in all likelihood, face a greater risk than those requiring between 32 and 42 hours of weekly service. Therefore, the Court adopts the following class definition:

> Louisiana residents with disabilities who have been receiving Medicaid-funded services through the LT-PCS program; who desire to reside in the community instead

of a nursing facility; who require more than 32 hours of Medicaid-funded personal care services per week in order to avoid entering a nursing facility, and who do not have available (including through family supports, shared living arrangements, or enrollment in the ADHC waiver) other means of receiving personal care services.

## II. Federal Rule of Civil Procedure 23

Plaintiffs assert that they meet Federal Rule of Civil Procedure 23's requirements for class certification (doc. 30). Defendants assert that the named plaintiffs' claims and possible defenses thereto are not typical of the remaining class members (doc. 32). Defendants also assert that the named plaintiffs will not fairly or adequately represent the interests of the remaining class members (doc. 32).

The class-action device was designed as a way to efficiently litigate cases involving issues common to a large group of individuals and turning on questions of law that apply to each member of the group. *Gen. Tel. Co. of the S.W. v. Falson*, 457 U.S. 147, 155 (1982). In determining whether to certify a class, a district court maintains substantial discretion. *Id.* To qualify for class relief under the Federal Rules of Civil Procedure, the plaintiffs must satisfy each of Rule 23(a)'s requirements and at least one of Rule 23(b)'s requirements. Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only of (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

> representative parties are typical of the claims or defenses of the class and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(2) states that "[a] class action may be maintained if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

**A. Numerosity**

Plaintiff asserts that the "numerosity" requirement is met because it is impracticable to join each of the individual members of the class. Plaintiff asserts that joinder is impracticable because of the sheer size of the class and because the class may include future members. In addition, the class members are geographically dispersed and many lack sufficient financial resources to bring suit individually. Defendants do not contest that the proposed class is sufficiently numerous.

There is no magic number for determining when a class is sufficiently numerous for purposes of Federal Rule of Civil Procedure 23. *See Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 624 (5th Cir. 1999) (stating that classes with over one hundred members generally suffice). The primary consideration for courts is the practicality of joining the members of a proposed class. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981). The practicality of joining members of a class is based on a number of factors

including the sheer size of the class and whether the class will include future members. *Id.* at 1039.

The Court finds that the proposed class is sufficiently numerous. Twenty-eight percent of the 12,000 individuals currently receiving LT-PCS services receive in excess of 32 hours per week (doc. 11, ex. 2, ¶ 37). It would be nearly impossible to join the over 3,300 cases were they to be filed individually. In addition, there are countless potential future members of the class who have not yet qualified for LT-PCS who may wish to preserve their rights. Finally, many of the proposed class members face severe financial hardship because of their conditions. These class members lack the financial resources necessary to bring suit individually in order to vindicate their rights. Therefore, Court finds that the "numerosity" requirement is satisfied.

### B. Commonality

Plaintiffs assert that there are common issues of law and fact as to each of the class members, such as (1) whether Defendants violate the ADA or Section 504's integration mandate by lowering the maximum weekly services hours from 42 to 32; or (2) whether Defendants violate the ADA or Section 504 by requiring individuals to submit to a 90-day stay in a nursing facility to immediately qualify for critical, supplemental services (doc. 30). Plaintiffs assert that differences in each member's condition or the specific services each member requires do not defeat a finding of commonality. Defendants do not contest that there are questions of law and fact common to the putative class members (doc. 32).

Federal Rule of Civil Procedure 23 requires that there be questions of law and fact that are common to each of the proposed class members. *See Mullen*, 186 F.3d at 625 (stating that the commonality requirement is satisfied if there is at least one issue, the resolution of which will affect a significant number of the putative class members); *Lightbourn v. Cnty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997) (same).

The Court finds that there are questions of law and fact common to each of the putative class members. The class includes all "Louisiana residents with disabilities who have been receiving Medicaid-funded services through the LT-PCS program" and "who require more than 32 hours of Medicaid-funded personal care services per week in order to avoid entering a nursing facility." Any individual falling in this class is at risk of being forced to enter a nursing home as a result of the reduction. The overriding question of law in the case is whether this risk violates the ADA's integration mandate. Moreover, whether the State's waiver programs are sufficient to pick-up slack created by the reduction is a question of fact common and significant to all of the putative class members. Because common questions of law and fact exist, the Court finds that the "commonality" requirement is satisfied.

**C. Typicality**

Plaintiffs assert that the named plaintiffs' claims are typical to the remaining class members because (1) the proposed reduction in LT-PCS hours exposes class members to an increased risk of institutionalization, and all class

9

members would assert that doing so violates the ADA and Section 504's integration mandate; and (2) all the class members would assert that the State's waiver programs provide supplemental services that are insufficient to avoid this risk; and (3) all class members would assert that, though an individual may immediately receive sufficient supplemental services by submitting to a 90-day stay in a nursing facility, this requirement violates the ADA and Section 504 by requiring institutionalization (doc. 30).

Defendants assert that they anticipate advancing defenses to the named plaintiffs' claims that are atypical to the remaining members of the class (doc. 32). For instance, Defendant asserts that (1) unlike most other members of the class, (1) Ainey was offered but declined placement in one of the State's waiver programs and therefore contributed to her risk of being institutionalized; (2) Pitts never sought placement in a waiver program and therefore her being institutionalized is not unjustified; (3) Hodges has been offered placement in a waiver program and her claim is therefore moot.

In reply, Plaintiffs assert that the individual circumstances cited for each of the named plaintiffs are either mischaracterized or irrelevant (doc. 33).[1]

Federal rule of Civil Procedure 23(a) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. That is, the named representatives must advance claims and defenses that are

---

[1] For instance, Plaintiffs assert that Ainey declined placement in a waiver program in 2004 because she was on better financial footing and that her doing so is irrelevant to whether she is currently at risk of institutionalization. Plaintiffs also assert that Pitts and Hodges are still on waiting lists for the EDA waiver program (doc. 33, ex. 8, ¶¶ 2-4).

10

similar, though not identical, to the claims and defenses that the remaining class members would advance were they to individually file parallel suits. *Lightbourn*, 118 F.3d at 426. According to district courts throughout the Fifth Circuit, the test for typicality is not demanding. *See, e.g., id.* That said, if the facts surrounding the named plaintiff are sufficiently different than other members of the class, a district court may deny class certification. *See, e.g.*, Warren v. Reserve Fund, Inc., 728 F.2d 741, 747 (5th Cir. 1984). Courts may do so on the grounds that representation of the class will suffer if the named plaintiff is preoccupied with a defense which is applicable only to himself. *J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir.1980).

The Court finds that the named plaintiffs' claims and the defenses to which they are subject are sufficiently typical to the claims and defenses applicable to the remaining class members. First, whether and why the named Plaintiffs failed to avail themselves of the State's waiver programs is reasonably in dispute. It is quite possible that Plaintiffs did not require additional services when receiving 42 hours of care per week, but now do as a result of the reduction. More importantly, the "typicality" test is "not demanding," and the parties' claims and defenses must be merely "typical," not "identical." *Lightbourn*, 118 F.3d at 426. Here, the named plaintiffs and remaining class members each claim that (1) the reduction in service hours increases their risk of institutionalization; (2) the waiting lists for the State's waiver programs do not move fast enough to provide the supplemental care they require to avoid institutionalization; and (3) they must

submit to the very type institutionalization they seek to avoid in order to be moved up the waiting lists. Because the named plaintiffs' and remaining class members' claims are sufficiently similar, the Court finds that the "typicality" requirement is satisfied.

**D. Fair and adequate representation by the class representatives**

Plaintiffs assert that the named plaintiffs will fairly and adequately represent the remaining class members (doc. 30). Plaintiffs assert that the named plaintiffs and remaining class members share the common interest in returning to the 42-hour maximum. In addition, Plaintiffs assert that the named plaintiffs will necessarily and vigorously protect the remaining members' claims because the two groups' claims are so factually and legally similar.

Defendants assert that some of the named plaintiffs will not fairly and adequately represent the remaining members of the class because (1) some named plaintiffs may be placed into waiver programs sooner than they would have been absent the new rules and may not wish to invalidate them;[2] (2) class members may conflict as to whether the State should offer greater services, thereby risking that the State will eventually eliminate the program altogether for financial reasons or should offer lesser, more sustainable services (doc. 32).

In reply, Plaintiffs assert that the alleged conflicts are too speculative to justify the Court in denying class certification (doc. 33)

---

[2] Defendants assert that Act 490 not only lowered the maximum weekly hours of service from 42 to 32, but also made certain waiver programs easier to enter. As such, class members who more easily entered a waiver program as a result of the Act, and thus had their care adequately supplemented, may not vigorously pursue having the Act invalidated.

Federal Rule of Civil Procedure 23 requires that "the representative parties will fairly and adequately protect the interests of the class." The Supreme Court of the United States has stated that "the adequacy-of-representation requirement 'tends to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997). In determining the adequacy of representation, courts consider whether and to what extent the class representatives have common and/or antagonistic interests to the remaining members of the class, and only differences which create conflicts of interests between the named plaintiffs and the remaining class members render representation inadequate. *Id.* at 614; *Mullen*, 186 F.3d at 625-26. Finally, Courts may consider whether the named plaintiffs have retained qualified counsel. *Amchem Prods.*, 521 U.S. at 614.

The Court finds that the named plaintiffs will fairly and adequately protect the interests of the remaining class members. Plaintiffs have only challenged the cut in weekly LT-PCS service hours, not the State's method of attending to the waiting lists for its waiver programs. Though some individuals may enter a waiver program faster than they would have without the corresponding diminution in weekly service, Defendants have failed to demonstrate that this has occurred in fact. In addition, Defendants correctly state that some class members may

prefer to receive lesser services than others if necessary to make the LT-PCS program more sustainable. However, the suit makes clear the interest of the class: to return to a 42-hour weekly maximum. Issues relating to the program's economic viability are pertinent only to whether such a return would constitute a "reasonable accommodation" or a "fundamental alteration" to the proposed 32-hour maximum.

In addition, the Court finds that the named plaintiffs have retained sufficiently competent counsel. Lead counsel, Nell Hahn, is an employee of the Advocacy Center, an organization that advocates for disabled individuals in Louisiana. Hahn has practiced law for over 30 years and has participated in a number of class action suits. In addition, Co-Counsel Stephen F. Gold is a nationally recognized expert in litigation involving the rights of disabled individuals and has over 40 years of experience in that field. Therefore, the Court finds that the named plaintiffs will fairly and adequately protect the interests of the remaining class members.

### E. Actions generally applicable to the class

Plaintiffs assert that the State's action applies to the class generally because each member will be subject to the 32-hour weekly maximum (doc. 30). Defendants do not challenge Plaintiffs' assertion (doc. 32).

Federal Rule of Procedure Rule 23(b)(2) states that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The term "generally," as its used in Rule 23(b)(2), requires only that the Defendants actions affect all similarly situated persons or apply to the class as a whole. *Johnson v. Am. Credit Co.*, 581 F.2d 526, 532 (5th Cir. 1978).

The Court finds that the State has acted on grounds that apply generally to the class such that injunctive or declaratory relief would be appropriate. The 32-hour weekly maximum plainly applies, not only to members of the class, but to all Louisiana citizens seeking HCBS. As such, Plaintiffs' suit satisfies Rule 23(b)(2).

## **Conclusion**

Accordingly, the Court hereby GRANTS Plaintiffs' Motion (doc. 30) for Class Certification. In addition, the Court adopts the class definition stated on pages five (5) and six (6) of this Ruling.

Signed in Baton Rouge, Louisiana this 6th day of June, 2011.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**